**EXHIBIT A**

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

INTER-NATIONAL FOUNDATION
CORPORATION
2720 Airport Drive
Suite 100
Columbus, OH 43219

Case No.
Judge

        Plaintiff,

v.

DISNEY 1999 LIMITED PARTNERSHIP
c/o Ronald W. Disney, Statutory Agent
5400 LBJ Freeway, Suite 525
Dallas, Texas, 75240

    and

BINGHAM 1999 LIMITED PARTNERSHIP
c/o Ronald W. Disney, Statutory Agent
5400 LBJ Freeway, Suite 525
Dallas, Texas, 75240

        Defendants.

09 CVH 9 14375

[FILED stamp: 2009 SEP 24 PM 12:47 CLERK OF COURTS-CV COMMON PLEAS COURT FRANKLIN CO. OHIO]

## COMPLAINT FOR BREACH OF CONTRACT AND MONEY DAMAGES WITH JURY DEMAND ENDORSED HEREON

Plaintiff, by counsel, for their Complaint against the Defendants, hereby states as follows:

### JURISDICTION AND VENUE

1. Plaintiff Inter-National Foundation Corporation ("INFC") is an Ohio not-for-profit corporation that maintains its principal place of business in Columbus, Ohio.

2. Defendant Disney 1999 Limited Partnership ("Disney L.P.") is a limited partnership, organized and operating under the laws of the State of Texas, the last known principal place of business of which is located in Dallas, Texas.

1

3. Defendant Bingham 1999 Limited Partnership ("Bingham L.P.") is a limited partnership, organized and operating under the laws of the State of Texas, whose principal place of business is located in Ovilla, Texas.

4. As more specifically set forth below, this action arises out of and relates to the breach by Defendants of certain security agreements ("Security Agreements") executed by Plaintiff for the benefit of each of the Defendants.

5. The Security Agreements were executed in the State of Ohio.

6. The Security Agreements specifically provide they are to be governed by and construed in accordance with the provisions of Ohio law.

7. Events giving rise to the claims set forth herein occurred within the State of Ohio.

8. This Court is an appropriate venue for this action.

## FACTS COMMON TO ALL COUNTS:

### BINGHAM:

9. On or about June 27, 2002 Plaintiff "borrowed" $50,000 from Bingham L.P. and executed the promissory note attached hereto and incorporated herein by reference as **Exhibit A** (the "Bingham Note").

10. At the time of the execution of the Bingham Note, INFC was a limited partner of Bingham L.P. and held a 98% interest in the assets and profits of Bingham L.P. (the "Bingham Partnership Interest").

11. On or about June 27, 2002 INFC also executed the security agreement attached hereto and incorporated herein by this reference as **Exhibit B** (the "Bingham Security Agreement"), to secure its obligations under the Bingham Note.

12. The Bingham Security Agreement was executed in the State of Ohio and specifically provides that its terms are to be governed by and construed pursuant to applicable Ohio law.

13. The collateral for the Bingham Security Agreement was the Bingham Partnership Interest.

14. The provisions of the Bingham Note, the Bingham Security Agreement along with applicable Ohio law provide for the right of set-off and recoupment.

15. Attached hereto and incorporated by reference as **Exhibit C** are true and accurate copies of the form "K-1" of the federal income tax return filed by Bingham L.P. for the years of 2003 through 2007 (the "Bingham K-1s").

16. According to the Bingham K-1s, INFC's share of the income of Bingham L.P. was as follows:

> 2003: $8,338,065.00
> 2004: $888,409.00
> 2005: $3,361,808.00
> 2006: $36,407.00
> 2007: $37,889.00
> (the "INFC Bingham Income")

17. Despite demand, the INFC Bingham Income was not distributed to INFC.

18. The Bingham K-1 for 2007 reflects that INFC's capital account in and to the Bingham Partnership Interest, as of December 31, 2007, was $15,494,115.

19. The fair market value of the Bingham Partnership Interest as of December 31, 2007 was not less than $15,494,115.

20. By notice dated October 2, 2008, a true and correct copy of which is attached hereto and is incorporated herein by this reference as **Exhibit D** (the "Bingham Notice"),

3

Bingham L.P. announced it would sell at auction INFC's Bingham Partnership Interest in satisfaction of the Bingham Promissory Note ("The Bingham Sale").

21. INFC objected to the Bingham Sale for, among other reasons, that the indebtedness evidenced by the Bingham Promissory Note was not due and owing.

22. Bingham L.P. refused to cancel the Bingham Sale.

23. The Bingham Sale was conducted at the office of counsel for Bingham L.P., Mr. Vincent Vogler ("Mr. Vogler").

24. The only parties attending the Bingham Sale were Mr. Vogler and legal counsel for the Plaintiff.

25. No disinterested third parties attended the Bingham Sale.

26. Upon information and belief the Bingham Sale was not advertised or published as required by the Uniform Commercial Code ("UCC").

27. The Bingham Partnership Interest was purchased by Mr. Bingham for $1,500.00, as reflected in **Exhibit E**, (the "Bingham Purchase") which is attached hereto and is incorporated herein.

28. The Bingham Purchase constitutes a conversion of the Bingham Partnership Interest under applicable law.

*DISNEY:*

29. On or about June 27, 2002 Plaintiff "borrowed" $50,000 from Disney L.P. and executed the promissory note attached hereto and incorporated by reference as **Exhibit F** (the "Disney Note").

30. At the time of the execution of the Disney Note, INFC was a limited partner of Disney L.P. and held a 98% interest in the assets and profits of Disney L.P. (the "Disney Partnership Interest").

31. On or about June 27, 2002 INFC also executed the security agreement attached hereto an incorporated herein by this reference as **Exhibit G** (the "Disney Security Agreement"), to secure its obligations under the Disney Note.

32. The Disney Security Agreement was executed in the State of Ohio and specifically provides that its terms are to be governed by and construed pursuant to applicable Ohio law.

33. The collateral for the Disney Security Agreement was the Disney Partnership Interest.

34. The provisions of the Disney Note, Disney Security Agreement along with applicable Ohio law provide for the right of set-off and recoupment.

35. Attached hereto as **Exhibit H** and incorporated by reference are true and accurate copies of the form "K-1" of the federal income tax return filed by Disney L.P. for the years of 2003 through 2007 (the "Disney K-1s").

36. According to the Disney K-1s, INFC's share of the income of Disney L.P. was as follows:

> 2003: $15,897,796.00
> 2004: $1,077,013.00
> 2005: $3,620,027.00
> 2006: $252,426.00
> 2007: $195,162.00
> (the "INFC Disney Income")

37. Despite demand, the INFC Disney Income was not distributed to INFC.

38. The Disney K-1 for 2007 reflects that INFC's capital account in and to the Disney Partnership Interest was, as of December 31, 2007, $27,180,436.00.

39. The fair market value of the Disney Partnership Interest as of December 31, 2007 was not less than $27,180,436.00.

40. By a notice dated October 2, 2008, a true and correct copy of which is attached hereto and is incorporated herein by this reference as **Exhibit I** (the "Disney Notice"), Disney L.P. announced it would sell at auction INFC's Disney Partnership Interest in satisfaction of the Disney Promissory Note ("The Disney Sale").

41. INFC objected to the Disney Sale for, among other reasons, that the indebtedness on the Disney Promissory Note was not due and owing.

42. Disney L.P. refused to cancel the Disney Sale.

43. The Disney Sale was conducted at the office of counsel for Disney L.P., Mr. Vogler.

44. The only parties attending the Disney Sale were Mr. Vogler and legal counsel for the Plaintiff.

45. No disinterested third parties attended the Disney Sale.

46. Upon information and belief, the Disney Sale was not advertised or published as required by the Uniform Commercial Code ("UCC").

47. The Disney Partnership Interest was purchased by Mr. Disney for $1,500.00, as reflected in **Exhibit J**, (the "Disney Purchase") which is attached hereto and is incorporated herein.

48. The Disney Purchase constitutes a conversion of the Disney Partnership Interest pursuant to applicable law.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT BY BINGHAM L.P.

49. Plaintiff hereby reincorporates the allegations contained in paragraphs 1 through 48, inclusive, as if set out verbatim herein.

50. The Plaintiff was not in default of the Bingham Security Agreement.

51. Defendant Bingham L.P. breached the terms and provisions of the Bingham Security Agreement.

52. As a consequence of the breaches of contract by Defendant Bingham L.P., Plaintiff has been damaged by an amount to be determined at trial, but in an amount not less than $15,494,115.

### COUNT II: BREACH OF CONTRACT BY DISNEY L.P.

53. Plaintiff hereby reincorporates the allegations contained in paragraphs 1 through 52, inclusive, as if set out verbatim herein.

54. The Plaintiff was not in default of the Disney Security Agreement.

55. Defendant Disney L.P. breached the terms and provisions of the Disney Security Agreement.

56. As a consequence of the breaches of contract by Defendant Disney L.P., Plaintiff has been damaged in an amount to be determined at trial, but not less than $27,180,436.

### COUNT III: FAILURE OF BINGHAM L.P. TO COMPLY WITH ARTICLE NINE OF THE UNIFORM COMMERCIAL CODE ("UCC")

57. Plaintiff reincorporates the allegations contained in paragraphs 1 through 56, inclusive, as if set out verbatim herein.

58. Ohio has codified Article 9 of the Uniform Commercial Code and the statutes related to the causes of action brought herein (the "Pertinent Statutes") [further references to the

7

Pertinent Statutes will be to the UCC section involved, and not to the specific state codifications of the UCC].

59. UCC 9-607 requires a secured party to "proceed in a commercially reasonable manner" to enforce a security interest.

60. UCC 9-610 requires that upon an event of default: "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable" (a "Commercially Reasonably Sale").

61. The Bingham Notice fails to comply with the Pertinent Sections of the UCC.

62. The Bingham Partnership Interest was not of a kind that is customarily sold on a recognized market and/or is the subject of widely distributed standard price quotations.

63. Bingham L.P. sold the property to a related person (Mr. Bingham) in a private sale at a price that is significantly below the range of proceeds that a complying disposition (to a person other than the secured party, a person related to the secured party, or a secondary obligor) would have brought.

64. The Bingham Sale was not a Commercially Reasonable Sale.

65. Bingham L.P. is liable under the Pertinent sections of the UCC, including but not limited to Section 9-625 for the difference between the amount which the sale brought ($1,500) and the amount a conforming sale would have brought (not less than $15,494,115).

## COUNT IV:  FAILURE OF DISNEY L.P. TO COMPLY WITH ARTICLE NINE OF THE UCC.

66. Plaintiff reincorporates the allegations contained in paragraphs 1 through 65, inclusive, as if set out verbatim herein.

67. UCC 9-607 requires a secured party to "proceed in a commercially reasonable manner" to enforce a security interest.

68. UCC 9-610 requires that upon an event of default: "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable" (a "Commercially Reasonably Sale").

69. The Disney Notice fails to comply with the Pertinent Sections of the UCC.

70. The Disney Partnership Interest was not of a kind that is customarily sold on a recognized market and/or is the subject of widely distributed standard price quotations.

71. Disney L.P. sold the property to a related party (Mr. Disney) at a private sale at a price that is significantly below the range of proceeds that a complying disposition (to a person other than the secured party, a person related to the secured party, or a secondary obligor) would have brought.

72. The Disney Sale was not a Commercially Reasonable Sale.

73. Disney L.P. is liable to Plaintiff under the Pertinent Sections of the UCC including but not limited to Section 9-625 for the difference between the amount which the sale brought ($1,500) and the amount which a conforming sale would have brought (not less than $27,180,436).

## COUNT V: WRONGFUL SALE AND CONVERSION BY BINGHAM L.P.

74. Plaintiff reincorporates the allegations contained in paragraphs 1 through 73, inclusive, as if set out verbatim herein.

75. By its actions under the Bingham Security Agreement, Bingham L.P. converted to its own use and benefit the Bingham Partnership Interest, by exercising dominion and control over the limited partnership interest of INFC in a manner inconsistent with the legal rights of ownership of INFC.

OCT-26-2009  10:49AM   FROM-VOGLER LAW FIRM                                T-900  P.013/016  F-854

76.     Bingham L.P. is legally responsible for the payment to INFC of the fair market value of the Bingham Partnership Interest.

77.     INFC's interest in Bingham L.P., which was wrongfully converted by Bingham L.P., has a fair market value in an amount to be determined at trial, but not less than $15,494,115.

## COUNT VI: WRONGFUL SALE AND CONVERSION BY DISNEY L.P.

78.     Plaintiff reincorporates the allegations contained in paragraphs 1 through 77, inclusive, as if set out verbatim herein.

79.     By its actions under the Disney Security Agreement, Disney L.P. converted to its own use and benefit the Disney Partnership Interest, by exercising dominion and control over the limited partnership interest of INFC in a manner inconsistent with the legal rights of ownership of INFC.

80.     Disney L.P. is legally responsible for the payment to INFC of the fair market value of the Disney Partnership Interest.

81.     INFC's interest in Disney L.P., which was wrongfully converted by Disney L.P., has a fair market value in an amount to be determined at trial, but not less than $27,180,436.

## COUNT VII: UNJUST ENRICHMENT TO BINGHAM L.P.

82.     Plaintiff hereby repeats the allegations contained in paragraphs 1 through 81, inclusive, as if set out verbatim herein.

83.     The Bingham Partnership Interest was worth not less than $15,494,115.

84.     By its actions under the Bingham Security Agreement Defendant Bingham L.P. knowingly, wrongfully and improperly converted and retained the Bingham Partnership Interest for $1,500.00 when it was worth not less than $15,494,115.

85. Defendant Bingham L.P. has also been unjustly enriched by virtue of certain benefits it received from INFC.

86. Defendant Bingham L.P. has been unjustly enriched at the expense of INFC in an amount to be determined at trial, but not less than $15,492,615.

## COUNT VIII: UNJUST ENRICHMENT TO DISNEY L.P.

87. Plaintiff hereby repeats the allegations contained in paragraphs 1 through 86, inclusive, as if set out verbatim herein.

88. The interest of INFC in Disney L.P. was worth $27,180,436.

89. By its actions under the Disney Security Agreement Defendant Disney L.P. knowingly, wrongfully and improperly converted and retained the Bingham Partnership Interest for $1,500.00 when it was worth not less than $27,180,436.

90. Defendant Disney L.P. has also been unjustly enriched by virtue of certain additional benefits it received from INFC.

91. Defendant Disney L.P. has been unjustly enriched at the expense of INFC in an amount to be determined at trial, but not less than $27,178,936.

**WHEREFORE**, Plaintiff prays judgment against Defendants:

a. As to Count One of Plaintiff's Complaint against Defendant Bingham 1999 Partnership for breach of contract by Defendant Bingham L.P., Plaintiff has been damaged in the amount of $15,494,115;

b. As to Count Two of Plaintiff's Complaint against Defendant Disney 1999 Limited Partnership for breach of contract by Defendant Disney L.P., Plaintiff has been damaged in the amount of $27,180,436;

c. As to Count Three of Plaintiff's Complaint against Defendant Bingham 1999 Partnership for the difference between the amount which the sale brought ($1,500) and the amount which a conforming sale would have brought (not less than $15,494,115);

d.  As to Count Four of Plaintiff's Complaint against Defendant Disney 1999 Limited Partnership for the difference between the amount which the sale brought ($1,500) and the amount which a conforming sale would have brought (not less than $27,180,436);

e.  As to Count Five of Plaintiff's Complaint against Defendant Bingham 1999 Partnership, INFC's interest in Bingham for conversion of the Partnership Interest, in an amount to be determined at trial, but not less than $15,494,115;

f.  As to Count Six of Plaintiff's Complaint against Defendant Disney 1999 Limited Partnership, INFC's interest in Disney for conversion of the Partnership Interest in an amount to be determined at trial, but not less than $27,180,436;

g.  As to Count Seven of Plaintiff's Complaint against Defendant Bingham 1999 Partnership for unjust enrichment in an amount to be determined at trial;

h.  As to Count Eight of Plaintiff's Complaint against Defendant Disney 1999 Limited Partnership for unjust enrichment in an amount to be determined at trial;

i.  Prejudgment and post-judgment interest, along with its costs and expenses incurred herein, including its reasonable attorney's fees incurred;

j.  Granting such other relief as the Court deems just and appropriate.

Respectfully submitted,

RICKETTS CO., L.P.A.

Richard T. Ricketts (0033538)
Eric J. Wittenberg (0038709)
50 Hill Road South
Pickerington, OH  43147
(614) 834-8225
Fax: (614) 834-8238
rtr@ricketts-law.com
ejw@ricketts-law.com
Attorneys for the Plaintiff

## JURY DEMAND

Plaintiff demands that this matter be heard by a jury of eight (8).

_____
Richard T. Ricketts

S:\WP80\Bowen,John\INFC\P2009 09 04 rtr draft of Complaint.doc

13